1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SWISS RE CORPORATE SOLUTIONS
AMERICA INSURANCE
CORPORATION FKA NORTH
AMERICAN SPECIALTY
INSURANCE COMPANY, a foreign
corporation,

     Plaintiff,

  v.

TODD A. KASMA, et al.,

     Defendants.

CASE NO. C23-5420 BHS

ORDER

   This matter is before the Court on Plaintiff Swiss Re Corporate Solutions

American Insurance Corporation's Federal Rule of Civil Procedure 12(c) motion for

judgment on the pleadings. Dkt. 22. Swiss Re moves to dismiss with prejudice Defendant

Todd Kasma's counterclaims of negligence and breach of the implied covenant of good

faith and fair dealing. *See* Dkt. 15, ¶¶ 57–78. Because Kasma fails to state a plausible

claim for relief, the motion is granted.

# I.   BACKGROUND

Todd Kasma was employed by non-party KEU, Inc., which is owned by his ex-wife, non-party Sally Kasma.[1] Dkt. 15, ¶¶ 58–60. KEU is a construction company that specializes in "site-development, demolition, and utilities." Dkt. 11, ¶ 10. While he was employed by KEU, "Kasma was responsible for bidding and project Management." Dkt. 15, ¶ 62.

KEU contracted with the federal government to perform construction services on three separate projects: the "Coal Creek" project, the "Lake Waconda" project, and the "Track and Field" project. Dkt. 11, ¶¶ 16–18. For each of these projects, Swiss Re issued payment and performance bonds pursuant to the Miller Act, 40 U.S.C. § 3131. *Id.* ¶¶ 7, 16. The penal sums on these bonds were $1,897,771.45 for the Coal Creek project, $2,318,379.65 for the Lake Waconda project, and $3,479,725.30 for the Track and Field project. *Id.* ¶ 16.

In July 2015, Kasma and Sally executed an indemnity agreement with Swiss Re in exchange for these bonds and others issued thereafter. Dkt. 11, ¶ 10; Dkt. 11-1 at 2, 5–6. The agreement indicates that the indemnitors entered into it jointly and severally: "As an inducement to the Surety [Swiss Re] and in consideration of the execution of continuance of the Bonds, the Indemnitors for themselves, their joint venture partners, their heirs, affiliates, subsidiaries, executors, administrators, successors and assigns, do *jointly and severally* enter into this Agreement." Dkt. 11-1 at 2 (emphasis added). The indemnity

---

[1] Because Todd Kasma and Sally Kasma share the same last name, the Court refers to Todd Kasma as "Kasma" and Sally Kasma as "Sally" to avoid confusion.

1    agreement "cover[s] all Bonds that have been and as may hereafter be applied for or

2    executed on behalf of . . . the undersigned, any successors, any affiliates, any

3    subsidiaries, any joint venture with others, and any person, firm, corporation or

4    association furnished to the Surety by any of the undersigned."[2] *Id.*

5         Subsequently, TTT Leasing, Inc., and Ross Land Development, LLC, executed

6    addendums to the agreement under which they also agreed to indemnify Swiss Re for all

7    bonds applied for or executed on their behalf. Dkt. 11, ¶¶ 11, 12. The indemnity

8    agreement indicates that Kasma is the "President/Secretary" of TTT Leasing and that

9    Sally is a "Member" of Ross Land Development. Dkt. 11-1 at 9, 11.

10        The indemnity agreement provides that "[t]he Indemnitors shall exonerate, hold

11   harmless and indemnify the Surety from and against any and all Loss." Dkt. 11-1 at 2.

12   Under the agreement, "Loss" is defined broadly as "any liability, loss, costs, damages,

13   attorneys' fees, consultants' fees, and other expenses, including interest, which Surety

14   may sustain or incur by reason of, or in consequence of, the execution of the Bonds."

15   Dkt. 11-1 at 2. The agreement further states that "Loss includes but is not limited to . . .

16   sums paid or liabilities incurred in the settlement of claims." *Id.*

17        The agreement also requires the indemnitors to provide money to Swiss Re as

18   collateral on the bonds upon Swiss Re's demand and after Swiss Re receives notice of a

19   claim: "Upon demand of the Surety, the Indemnitors shall immediately deposit with the

20   _____

21   [2] Any indemnitor has the right to terminate its obligations under the indemnity agreement by providing Swiss Re written notice of its intent to do so. Dkt. 11-1 at 4. Such termination takes effect 30 days after Swiss Re receives the notice, but the termination does not relieve the indemnitor of its obligations with regard to any bond issued prior to termination. *Id.*

22

1   Surety a sum of money as collateral security on the Bonds. The Surety's right to demand

2   collateral security shall be triggered . . . if it received any notice of default, claim, or

3   lawsuit asserting liability." Dkt. 11-1 at 2.

4          Swiss Re has since "received payment bond claims from unpaid suppliers and

5   subcontractors of KEU for labor, materials, and services provided to KEU" on all three of

6   the projects. Dkt. 11, ¶ 19. In response to these claims, Swiss Re remitted payments to

7   numerous claimants for the Lake Waconda and Track and Field projects in the amounts

8   of $994,354.88 and $1,116,546.52, respectively. *Id.* ¶ 20. However, Swiss Re has

9   outstanding claims amounting to $2,117,718.67 for the Lake Waconda project and

10  $113,876.82 for the Track and Field project. *Id.* ¶ 23.

11         Furthermore, the claims for the Coal Creek project exceed the penal sum of the

12  bond issued for that project. *Id.* ¶ 21. Swiss Re commenced an interpleader action in the

13  United States District Court for the Central District of Illinois "for the deposit of the bond

14  penal sum in the amount of $1,897,771.45 and distribution of said amount pro rata to

15  unpaid suppliers and subcontractors." *Id.* ¶ 22. Swiss Re asserts that it "will suffer a loss

16  in the principal amount of $1,897,771.45 on the Coal Creek project." *Id.*

17         Swiss Re demanded that Kasma indemnify it against these claims and provide it

18  with collateral in the amount of $6,279,091.47. Dkt. 11, ¶¶ 27–29, 41. To date, Kasma,

19  TTT Leasing, and Ross Land Development have not provided Swiss Re with its

20  requested collateral. *Id.* ¶ 42.

21         Swiss Re sued Kasma, TTT Leasing, and Ross Land Development for breach of

22  contract, asserting that they have failed to both indemnify it and provide it with sufficient

1   collateral to satisfy the payment bond claims. *Id.* ¶¶ 31–38. Swiss Re seeks specific

2   performance, injunctive relief and prejudgment relief, including writs of attachment and

3   garnishment against the defendants' assets, a lien on the defendants' assets, and attorney

4   fees and costs. *Id.* at 10–12.

5       Kasma answered and asserts counterclaims of negligence and breach of the

6   implied duty of good faith and fair dealing. Dkt. 15, ¶¶ 57–78. Kasma alleges that, in

7   August 2020, Sally terminated his employment at KEU and filed for divorce. *Id.* ¶ 60.

8   After his termination, Kasma contacted Swiss Re's bonding agent and "expressed

9   concerns over the bidding practiced adopted by KEU after Defendant Kasma was

10  terminated." *Id.* ¶ 64. He stated that KEU "was taking on jobs that it was not qualified or

11  staffed to perform, and that it would not be able to successfully complete the projects

12  being bid" on. *Id.* He expressed concern that "KEU was not meeting project schedules,

13  was performing work outside of its expertise, [] had plummeting cash flows," and "was

14  underbidding projects by hundreds of thousands of dollars." *Id.* ¶¶ 67–68. Despite these

15  warnings, "Swiss Re continued to issue bonds based on KEU's bids." *Id.* ¶ 69.

16      Kasma claims that "Swiss Re negligently failed to investigate whether KEU was

17  capable of completing projects prior to issuing bonds." Dkt. 15, ¶ 71. He asserts that he

18  "has been injured by Plaintiff's negligence in the amount of his fees and costs in

19  defending this lawsuit." *Id.* Kasma also claims that Swiss Re's "decision to issue bonds to

20  KEU despite KEU's inability to handle the projects it was bidding [on] is a breach of the

21  implied duty of good faith and fair dealing." *Id.* ¶ 76. He asserts that Swiss Re's failure to

22

1  investigate placed him "in a position where there was a substantial likelihood that he

2  would be personally responsible for all of Plaintiff's losses." *Id.* ¶ 75.

3         Swiss Re moves for judgment on the pleadings on Kasma's counterclaims. Dkt.

4  22. It contends that the negligence counterclaim fails because Kasma fails to articulate a

5  cognizable legal theory under which Swiss Re owed him a duty to "investigate whether

6  KEU was capable of completing projects prior to issuing bonds." Dkt. 22 at 13. Swiss Re

7  asserts that, "[a]bsent any duty, Kasma's negligence claim fails." *Id.* Swiss Re further

8  argues that Kasma's negligence claim fails because his asserted injury is his attorney fees

9  and costs in defending this lawsuit, yet, under Washington law, attorney fees are not

10  available as costs or damages absent a contract, statute, or recognized ground in equity.

11  *Id.* at 13–14.

12         Swiss Re contends that Kasma's counterclaim of breach of the implied duty of

13  good faith and fair dealing fails because Kasma fails to identify any contractual provision

14  that would impose such a duty on Swiss Re. Dkt. 22 at 16. It argues that this implied duty

15  arises only when a contract gives a party discretionary authority to determine a contract

16  term. *Id.* Swiss Re contends that Kasma fails to identify any such contractual provision in

17  the indemnity agreement. *Id.*

18         Kasma responds—without citation to authority—that Swiss Re owed him a tort

19  duty to investigate whether KEU was able to complete projects prior to issuing bonds.[3]

20

---

21         [3] Swiss Re moves to strike Kasma's response brief as untimely and to interpret its
tardiness as a concession that Swiss Re's Rule 12(c) motion has merit. Dkt. 24 at 2–5 (citing
Local Rules, W.D. Wash. LCR 7(b)(2)). Indeed, Kasma filed his response brief on the noting
22  date, March 8, when it was due four days earlier, on March 4. *See* Dkt 23. This left Kasma with

1  *See generally* Dkt. 23. He also contends that Washington law does not limit the implied

2  duty of good faith and fair dealing to when a contract gives a party discretionary

3  authority to determine a contract term. *Id.* at 4–5. He asserts that, under the indemnity

4  agreement, the implied duty of good faith and fair dealing required Swiss Re to

5  investigate KEU's ability to complete projects prior to issuing bonds. *Id.*

6      The issues are addressed in turn.

7                          **II.   DISCUSSION**

8  **A.    Rule 12(c) Standard.**

9      Federal Rule of Civil Procedure 12(c) "is 'functionally identical' to Rule 12(b)(6)

10  and . . . 'the same standard of review' applies to motions brought under either rule."

11  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

12  2011) (quoting *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

13  Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

14  theory or the absence of sufficient facts alleged under a cognizable legal theory.

15  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's

16  complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft*

17  *v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party

18  seeking relief "pleads factual content that allows the court to draw the reasonable

19  inference that the defendant is liable for the misconduct alleged." *Id.*

20  _____

21  only hours to file a reply. *See* Dkt. 24 at 2. The Court agrees that Kasma's response was untimely and that this "suggests a lack of interest in pursuing his counterclaims, or a lack of belief in their merit." Dkt. 24 at 4. However, the Court elects to resolve Kasma's counterclaims on the merits

22  because they are plainly meritless. The motion to strike is accordingly **DENIED**.

ORDER - 7

1      Although courts must accept as true the complaint's well-pleaded facts,

2  conclusory allegations of law and unwarranted inferences will not defeat an otherwise

3  proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246,

4  1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

5  2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

6  requires more than labels and conclusions, and a formulaic recitation of the elements of a

7  cause of action will not do. Factual allegations must be enough to raise a right to relief

8  above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

9  (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-

10  defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

11  550 U.S. at 555).

12      When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant

13  leave to amend even if no request to amend the pleading was made, unless it determines

14  that the pleading could not possibly be cured by the allegation of other facts." *Cook,*

15  *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However,

16  when the facts are not in dispute and the sole issue is whether there is liability as a matter

17  of substantive law, courts may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193,

18  195–96 (9th Cir. 1988).

19  **B.     Kasma fails to state a plausible negligence claim.**

20      Kasma's negligence counterclaim assumes that Swiss Re had an affirmative duty

21  "to investigate whether KEU was capable of completing projects prior to issuing bonds."

22  Dkt. 15, ¶ 71. Swiss Re asserts that this assumption is baseless because its "research has

1    not identified any court that has held a surety liable to an indemnitor based on a surety's

2    alleged failure to investigate a bond principal's capacity to complete work prior to issuing

3    bonds." Dkt. 22 at 11. Kasma acknowledges that, "[w]hile it may be true that there are no

4    reported cases, it does not follow that no duty exists." Dkt. 23 at 6. Kasma then asserts

5    that Swiss Re owned him a tort duty to investigate, but he does not provide any legal

6    argument in support of this assertion. *See generally* Dkt. 23.

7          To establish negligence, a plaintiff must prove (1) the existence of a duty, (2)

8    breach of that duty, (3) resulting injury, and (4) proximate cause. *Ranger Ins. Co. v.*

9    *Pierce County*, 164 Wn.2d 545, 552 (2008). "The existence of a legal duty is a question

10   of law." *Pitoitua v. Gaube*, 28 Wn. App. 2d 141, 151 (2023).

11         "'At common law, every individual owes a duty of reasonable care to refrain from

12   causing foreseeable harm.'" *Pitoitua*, 28 Wn. App. 2d at 153 (quoting *Beltran-Serrano v.*

13   *City of Tacoma*, 193 Wn.2d 537, 550 (2019)). "This duty 'encompasses the duty to

14   refrain from directly causing harm to another through affirmative acts of misfeasance.'"

15   *Pitoitua*, 28 Wn. App. 2d at 153 (quoting *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d

16   at 550). "The common law distinguishes between torts based on 'acts' and 'omissions';

17   [generally] refusing to impose liability on the latter." *Pitoitua*, 28 Wn. App. 2d at 153

18   (quoting *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 300 (1975)).

19         "Misfeasance involves active misconduct resulting in positive injury to others and

20   'necessarily entails the creation of a new risk of harm to the plaintiff.'" *Pitoitua*, 28 Wn.

21   App. 2d at 153 (quoting *Robb v. City of Seattle*, 176 Wn.2d 427, 437 (2013)).

22

1    "Conversely, nonfeasance is a 'passive inaction or failure to take steps to protect others

2    from harm.'" *Pitoitua*, 28 Wn. App. 2d at 153 (quoting *Robb*, 176 Wn.2d at 437).

3      A defendant may be held liable for nonfeasance when "(a) the defendant has

4    induced the plaintiff to justifiably rely on the defendant; (b) the defendant has entered

5    into a relationship that imposes a duty of care; or (c) a statute specifically imposes a duty

6    to exercise care for another's safety." 16 DAVID K. DEWOLF & KELLER W. ALLEN,

7    WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 2:7 (5th ed. 2023).

8      Kasma alleges that "Swiss Re negligently *failed* to investigate whether KEU was

9    capable of completing projects prior to issuing bonds." Dkt. 15, ¶ 71 (emphasis added).

10   He accordingly seeks to hold Swiss Re liable for nonfeasance. However, Kasma does not

11   articulate any legal theory under which Swiss Re assumed a tort duty to Kasma—its

12   indemnitor—to take affirmative steps to investigate whether KEU was capable of

13   completing projects prior to issuing bonds. He also does not cite *any* legal authority in

14   support of this claim. *See generally* Dkt. 23. For these reasons alone, his negligence claim

15   fails.

16     Kasma also fails to plausibly allege any legally-cognizable injury underlying his

17   negligence claim. His sole alleged injury under this claim is "the amount of his fees and

18   costs in defending this lawsuit." Dkt. 15, ¶ 72. As Swiss Re persuasively asserts, attorney

19   fees in Washington "'are not available as…damages absent a contract, statute, or

20   recognized ground in equity.'" Dkt. 22 at 13–14 (quoting *Dalton M, LLC v. N. Cascade*

21   *Tr. Servs., Inc.*, 534 P.3d 339, 350 (2023)). Kasma fails plausibly assert that any of these

22   exceptions apply here.

ORDER - 10

1    Kasma accordingly fails to state a plausible negligence claim. Swiss Re's Rule

2    12(c) motion on Kasma's negligence counterclaim is **GRANTED** and that counterclaim

3    is **DIMSISSED with prejudice** and **without leave to amend**.

4    **C.    Kasma fails to state a plausible claim of breach of the implied covenant of good faith and fair dealing.**

5

6    Kasma asserts in a conclusory manner that Swiss Re's "decision to issue bonds to

     KEU despite KEU's inability to handle the projects it was bidding [on] is a breach of the

7    implied duty of good faith and fair dealing." Dkt. 15, ¶ 76. Swiss Re contends that this

8    implied duty arises only when a contract gives a party discretionary authority to

9    determine a contract term and that Kasma fails to identify any such contractual provision

10   in the indemnity agreement. Dkt. 22 at 16 (citing *Rekhter v. State, Dep't of Soc. & Health*

11   *Servs.*, 180 Wn.2d 102, 113 (2014)). Kasma responds that, "[d]iscretionary authority over

12   a contract term is not the only way that the duty can apply, but rather how it applied

13   under the *Rekhter* facts." Dkt. 23 at 5.

14   In Washington, "'[t]here is in every contract an implied duty of good faith and fair

15   dealing' that 'obligates the parties to cooperate with each other so that each may obtain

16   the full benefit of performance.'" *Rekhter*, 180 Wn.2d at 112 (quoting *Badgett v. Sec.*

17   *State Bank*, 116 Wn.2d 563, 569 (1991)). Although it is "'possible to breach the implied

18   duty of good faith even while fulfilling all of the terms of the written contract,'" the duty

19   "cannot add or contradict express contract terms and does not impose a free-floating

20   obligation of good faith on the parties." *Rekhter*, 180 Wn.2d at 112, 113 (quoting

21   *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 766 (7th Cir. 2010), *cert. denied*,

22

1   563 U.S. 903 (2011)). The duty accordingly "'arises only in connection with terms agreed

2   to by the parties.'" *Rekhter*, 180 Wn.2d at 113 (quoting *Badgett*, 116 Wn.2d at 569).

3        One circumstance in which "the duty of good faith and fair dealing arises" is

4   "'when the contract gives one party discretionary authority to determine a contract

5   term,'" such as quantity, price, or time. *Rekhter*, 180 Wn.2d at 113 (emphasis added)

6   (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn, App. 732, 738

7   (1997)). In this context, the duty operates to "'limit[] the authority of a party retaining

8   discretion to interpret contract terms'" and "'it does not provide a blank check for that

9   party to define terms however it chooses.'" *Rekhter*. 180 Wn.2d at 113 (emphasis

10  removed) (quoting *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001)).

11       The implied duty also operates to "cast[] on each party a duty not to interfere with

12  the other party's performance." *State v. Trask*, 91 Wn. App. 253, 273 (1998). "It does

13  not, however, cast on either party a duty to affirmatively assist in the other party's

14  performance." *Id.* Indeed, "a party has no duty to affirmatively assist the other party in

15  the absence of an express or implied promise to that effect." *Id.*

16       Kasma does not identify *any* provision of the indemnity agreement in support of

17  his argument, let alone one that provides Swiss Re with "discretionary authority to

18  determine a contract term." *Rekhter*, 180 Wn.2d at 113. He also does not allege that

19  Swiss Re interfered with his performance under the agreement. *See Trask*, 91 Wn. App.

20  at 273. Kasma instead contends that he "warned [Swiss Re] that KEU was not meeting its

21  project schedules, was performing work outside its expertise and had plummeting cash

22  flow" and that Swiss Re "had a duty of good faith and fair dealing to look into these

1 | warnings." Dkt. 23 at 4. Kasma essentially argues that Swiss Re had a duty to

2 | affirmatively assist him absent an express or implied promise to do so. The implied duty

3 | of good faith and fair dealing does not extend that far. *See Trask*, 91 Wn. App. at 273.

4 | Kasma accordingly fails to state a plausible claim of breach of the implied duty of

5 | good faith and fair dealing. Swiss Re's Rule 12(c) motion on this counterclaim is

6 | **GRANTED** and the counterclaim is **DISMISSED with prejudice** and **without leave to**

7 | **amend**.

## III.   ORDER

Therefore, it is hereby **ORDERED** that Swiss Re's Rule 12(c) motion for

judgment on the pleadings, Dkt. 22, is **GRANTED**. Kasma's counterclaims of

negligence and breach of the implied covenant of good faith and fair dealing are

**DISMISSED with prejudice** and **without leave to amend**.

Dated this 15th day of July, 2024.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 13